Jason WENTZ, Appellant (Defendant/Petitioner Below),

v.

STATE of Indiana, Appellee (Plaintiff/Respondent Below).

No. 82S00–9804–CR–238.

Supreme Court of Indiana.

April 15, 2002.

I. Marshall Pinkus, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## ON DIRECT APPEAL AND ON PETITION FOR POSTCONVICTION RELIEF

BOEHM, Justice.

Jason Wentz was convicted of felony murder, kidnapping, burglary, robbery, residential entry, and two counts of auto theft and sentenced to seventy-nine and one-half years imprisonment. He raises six issues for review, which we restate as five. He contends: (1) the trial court erred by telling the jury its understanding of the case at the beginning of jury selection; (2) the trial court erred by denying his motion for a change of venue; (3) the trial court erred by overruling his motion to exclude certain evidence; (4) the trial court erred by imposing consecutive sentences; and (5) his trial counsel was ineffective. We affirm the judgment of the trial court and the denial of postconviction relief in all respects except for Wentz's sentencing. We vacate Wentz's sentence for kidnapping and remand with instructions to impose concurrent sentences on all remaining counts.

### Factual and Procedural Background

At about 3 a.m. on July 26, 1996, Jason Wentz and Joseph Henson abducted Donna Heseman as she walked through the parking lot of the Bristol Myers facility in Evansville where she worked. Henson forced Heseman into her car with a shotgun while Wentz waited in the car the pair had driven from Paris, Illinois. At Henson's order, Heseman began driving her car with Wentz following when Henson shot Heseman and caused the car to crash through an entrance gate at the facility. Henson abandoned Heseman's car, jumped in with Wentz, and the two sped away.

The pair quickly abandoned their car and soon came upon Nelson Reynolds' trailer, where Stacy Durham and Chris Freeman were sleeping. Henson and Wentz entered, demanded the keys to Reynolds' truck, and left in that vehicle. Later that morning, the two unsuccessfully attempted to gain entry to the residence of Kathryn Kuester, but managed to steal

Gregory Epley's car from in front of his home. That car was later found abandoned in a bean field. Eventually the pair broke into the empty residence of Orville Childers. When Childers arrived home, the intruders demanded the keys to his truck and sped off again. The two were finally apprehended when they crashed Childers' truck into a sheriff's car.

Police recovered evidence from Childers' residence and from the various vehicles Henson and Wentz had occupied that day. Included among these items were the shotgun used to kill Heseman, a sock cap containing hair, several gloves, a police scanner, shotgun shells, camouflage sandals, gloves, and a black BB gun in a duffel bag. Henson was sentenced to a total of 100 years in a trial that preceded Wentz's. *See Henson v. State,* 707 N.E.2d 792 (Ind. 1999).

Wentz's trial resulted in convictions of felony murder, kidnapping as a Class A felony, burglary as a Class B felony, robbery as a Class B felony, residential entry as a Class D felony, and two counts of auto theft as Class D felonies. The trial court sentenced him to seventy-nine and one-half years imprisonment. Pursuant to *Davis v. State,* 267 Ind. 152, 368 N.E.2d 1149 (1977), this Court stayed his direct appeal pending a hearing on postconviction relief. In this opinion, we address the issues Wentz raises on direct appeal, as well as his appeal of the denial of his petition for postconviction relief.

## I. Trial Court's Comments to Jury

■ Wentz contends the trial court erred when it told the jury venire its understanding of the case at the onset of voir dire. In the course of addressing the prospective jurors, the trial court made the following statement:

The theory of the case—at least my understanding of the theory of the case is that the State has alleged that Mr. Wentz was present at the night of the alleged homicide and participated in the abduction of the victim and the taking of the car. I do not believe the State is alleging that Mr. Wentz pulled the trigger here. But what they're saying is that he participated in it. And what that is called is Felony Murder. Okay? If someone is participating in a felony and a murder results, then the State can actually charge a murder. All right? Now, what Mr. Wentz is saying is that he was present at the scene but he didn't know any of this was going to happen. Okay? So, that's basically the framework of the case. And, as jurors, it would be your job then to determine what the participation of Mr. Wentz was in this case and your job to determine whether or not the State of Indiana has proved its theory beyond a reasonable doubt before you can vote for conviction.

Wentz contends that this discourse was the equivalent of the trial judge's taking the stand as a witness, placing Wentz at the scene of the murder, and telling the venire that Wentz participated in the crime. Wentz claims the trial court's action denied him his right to confront witnesses under the Sixth Amendment to the United States Constitution[1] and Article I, Section 13 of the Indiana Constitution.[2] Wentz also argues that the trial court's statement forced him to testify and explain his presence at the murder scene, which violated the protection against self-incrimination afforded by the Fifth Amendment to the

1. The Sixth Amendment states, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."

2. Article I, Section 13 states, in relevant part, "In all criminal prosecutions, the accused shall have the right ... to meet the witnesses face to face...."

United States Constitution.[3] Although Wentz did not object to the trial court's statement, he contends the trial court committed fundamental error reviewable without the need to preserve the error. For the fundamental error doctrine to apply, however, we must find the alleged error so prejudiced the defendant's rights as to make a fair trial impossible. *Corcoran v. State,* 739 N.E.2d 649, 655 (Ind.2000).

We agree with the general proposition Wentz puts forth: trial judges should refrain from commenting on what they believe the defendant will or will not argue at trial. Although a trial judge has "broad discretionary power to regulate the form and substance of voir dire," he or she also has "a concurrent duty to remain impartial and to refrain from making unnecessary comments or remarks." *Williams v. State,* 555 N.E.2d 133, 137 (Ind.1990). Trial judges should exercise care to avoid an indirect expression of their opinion to the jury. Jurors' respect for the judge can lead them to accord undue significance to their reading of the judge's intimations, whether or not any are intended. *Kennedy v. State,* 258 Ind. 211, 226, 280 N.E.2d 611, 620–21 (1972). The judge's anticipation of the defense strategy is also a concern because the trial strategy of a criminal defendant may change at a moment's notice. We understand the trial court's reference to "what the defendant is saying" as predicting trial counsel's argument, not the defendant's testimony. Nevertheless, neither the decision to testify nor the defense's contentions should be influenced or painted into a corner by the court's predictions.

Although we agree with these points Wentz raises, we do not agree that the judge's comments require reversal here. At trial, Wentz argued that, although he was at the scene of the murder, Henson's actions took him by surprise. Further, although Wentz stated at his postconviction relief hearing that he felt compelled to testify, it was because of his attorney's advice that it was his only defense, not because of any action of the trial judge. Although the trial court's comments were unnecessary, they ultimately were essentially accurate, and there is no indication that they so prejudiced Wentz's rights as to make a fair trial impossible. There was no fundamental error; therefore, Wentz's claim as to this issue fails.

## II. Change of Venue

The tremendous amount of pre-trial publicity—due in large part to Henson's earlier trial—led to Wentz's motion for change of venue from Vanderburgh County on August 7, 1996. Three hearings were held on the motion, with the final one taking place on September 7, 1997. At the conclusion of the hearings, the trial court denied Wentz's motion, but asked the parties to strike from a list of three other counties to select an alternate venue if a panel from Vanderburgh County could not be seated. Wentz concedes, however, that his trial counsel did not respond to the judge's request. Although such a failure is grounds for waiver, *cf. McDaniel v. State,* 268 Ind. 380, 382, 375 N.E.2d 228, 230 (1978), Wentz claims the trial court should have ordered a change of venue sua sponte because of the saturation media coverage. We address this issue primarily because it is recast in Part V as an ineffective assistance of counsel claim.

This Court reviews a trial court's denial of a motion for a change of venue for an abuse of discretion. *Specht v. State,* 734 N.E.2d 239, 241 (Ind.2000). To prevail

---

**3.** The Fifth Amendment states, in relevant part, "No person ... shall be compelled in any criminal case to be a witness against himself...."

on this claim, Wentz must demonstrate (1) prejudicial pretrial publicity and (2) the inability of the jurors to render an impartial verdict. *Id.* Although Wentz demonstrated the extensive pretrial coverage of this matter in Vanderburgh County, "[t]hat potential jurors were exposed to press coverage does not satisfy this test." *Id.* Wentz must also prove the jurors were unable to disregard preconceived notions and render a verdict based on the evidence. *Id.* At the onset of voir dire, the trial court questioned the prospective jurors about their prior knowledge of the case. As far as this Court can tell, nearly every juror—if not all—responded that he or she had heard something about the case. However, the trial court went to great lengths to question the prospective jurors, and excused those who, in its judgment, could not render an impartial verdict. Further, Wentz was afforded ten peremptory juror strikes but used only two, and he fails to point us to anything, other than his speculation, that remotely suggests the seated jurors did not render an impartial verdict based upon the evidence. Wentz has not established that the trial court abused its discretion in denying his motion for a change of venue.

### III. Exclusion of Hair Evidence

■ Wentz moved to exclude the testimony of State witness Susan Laine. During the hearing on Wentz's motion, Laine testified that she compared hair found in a sock cap left at the crime scene to Wentz's, and that the hair was "sufficiently similar to be of possible common origin with Jason Wentz." Wentz argued that the prejudicial effect of Laine's testimony substantially outweighed its probative value, violating Indiana Evidence Rule 403. However, his motion was denied and his objection during Laine's testimony was overruled. On appeal, Wentz again argues that Laine's testimony violated Rule 403. In addition,

Wentz argues on appeal that (1) Laine was never qualified as an expert and (2) the procedures she employed were not scientifically reliable, violations of Evidence Rule 702.

■ This Court will reverse a trial court's Rule 403 determination only when there is an abuse of discretion. *Wheeler v. State,* 749 N.E.2d 1111, 1114 (Ind.2001). Wentz contends that, because Laine could not say with certainty that the hair from the sock cap matched Wentz's, Laine's testimony was so unreliable and speculative that it was prejudicial to allow its introduction. This Court has already held that trial courts are generally within their discretion to permit hair comparison analysis. *McGrew v. State,* 682 N.E.2d 1289, 1292 (Ind.1997). Wentz offers nothing specific to distinguish Laine's testimony from that which we found admissible in *McGrew.* The testimony was that the hair sample was consistent with Wentz's, not that it was a conclusive match. The remedy for this is cross-examination, not exclusion. The admission of this evidence under Rule 403 did not constitute an abuse of discretion.

■ Wentz raises his Rule 702 arguments for the first time on appeal. This is a good example of the reason for the requirement of objection at trial. Because no Rule 702 objection was raised, there was no need or opportunity to cure any flaw in the foundation for Laine's testimony. Therefore, these arguments are waived. *Brown v. State,* 728 N.E.2d 876, 878 (Ind.2000) ("A party may not object on one ground at trial and raise a different ground on appeal.").

### IV. Sentencing

■ Wentz was found guilty of felony

murder,[4] kidnapping as a Class A felony, burglary as a Class B felony, two counts of auto theft as Class D felonies, residential entry as a Class D felony, and robbery as a Class B felony. When Wentz first appeared before the trial court for sentencing, the court found the aggravating and mitigating factors "balance out in this situation" and imposed a sentence of 55 years for the felony murder conviction, 30 years for kidnapping, 10 years for burglary, 18 months for each auto theft, 18 months for residential entry, and 10 years for robbery. The court then ordered that the sentences for each count should run concurrently, except for the felony murder and kidnapping, which the court determined should run consecutive to each other. Wentz was sentenced to a total of 85 years.

After the sentence was announced, the State advised the court that, as the prosecutor understood the law, consecutive sentences for felony murder and kidnapping could not be imposed because the murder conviction was predicated on kidnapping as the underlying felony. The trial court disagreed and concluded the sentencing hearing. Later the same day, however, the court called the parties back for a second sentencing hearing and informed them that it had made a mistake as to the consecutive sentences for felony murder and kidnapping. Again, the court found the aggravating and mitigating factors balanced out and stated that the standard term on each count was warranted. However, the court then imposed consecutive sentences for the burglary, robbery, resi-

dential entry and two auto theft counts, ordering that they run consecutive to the felony murder and kidnapping counts and consecutive to each other. Wentz was then re-sentenced to seventy-nine and one-half years. Wentz argues that this imposition of consecutive sentences was also inappropriate. We agree.

■ Indiana Code section 35–50–1–2 permits trial courts to determine whether terms of imprisonment shall be served concurrently or consecutively by considering aggravating and mitigating circumstances. However, when the trial court finds those circumstances in balance, "there is no basis on which to impose consecutive terms." *Marcum v. State,* 725 N.E.2d 852, 864 (Ind.2000). As in *Marcum,* the imposition of consecutive sentences here, where the trial court twice stated the mitigating and aggravating factors were in balance, was inappropriate. On this point, we remand to the trial court with instructions to impose concurrent sentences for all counts.

■ We further note that the trial court entered sentences for both felony murder and the kidnapping which was the felony supporting the felony murder conviction. This is impermissible under both state and federal double jeopardy rules. It amounts to sentencing for a crime and its lesser-included offense. *Griffin v. State,* 717 N.E.2d 73, 80–81 (Ind.1999); *Richardson v. State,* 717 N.E.2d 32, 52 n. 45 (Ind.1999). This issue was not raised at sentencing, nor was it raised by Wentz's appellate counsel. However, we address this problem sua sponte and remand with

---

4. This count is referred to at several points in the record as both "murder" and "felony murder." However, the trial court's final instruction to the jury, citing Ind.Code § 35–42–1–1(2), was on the elements of felony murder:

A person who kills another human being while committing kidnapping, commits murder, a felony.

To convict the defendant, the State must have proved each of the following elements: The defendant;
1. on or about July 26, 1996,
2. killed
3. another human being Donna Heseman
4. while committing kidnapping.

instructions to vacate Wentz's sentence for kidnapping. *Cf. Jones v. State*, 689 N.E.2d 722, 725 (Ind.1997).

## V. Ineffective Assistance of Counsel

Wentz's final two arguments support a claim of ineffective assistance of trial counsel raised in the postconviction proceeding.[5] Wentz contends his trial counsel was ineffective in the following respects: (1) counsel failed to object to the trial court's comments to the venire regarding its theory of the case; (2) counsel inadequately attempted to change venue; (3) counsel failed to object to witness Susan Laine's qualifications as an expert; (4) counsel denied Wentz his right not to testify; (5) counsel allowed the State to attack Wentz's credibility; and (6) counsel failed to represent Wentz adequately during sentencing.

■■■■■■■ This Court reviews claims of ineffective assistance of counsel under the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. 2052, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment, *id.* at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defendant. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

### A. *Claims that Fail to Demonstrate Prejudice*

This Court has stated that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Williams v. State*, 706 N.E.2d 149, 154 (Ind.1999) (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052). Several of Wentz's claims fail this prong of *Strickland*.

### 1. *Trial Court's Comments to Venire*

■■■ We agree with Wentz that his counsel should have objected to the trial court's comments reporting what Wentz would argue at trial, although we doubt that this instance on its own amounts to the deficient performance necessary to satisfy *Strickland*. In any event, as explained in Part I, Wentz has demonstrated no prejudice from the trial court's comments. Therefore, this claim fails.

### 2. *Change of Venue*

■■■ Wentz has a tenable argument that his counsel performed deficiently by failing to submit a strike to one of the alternate counties listed by the trial court. *McDaniel v. State*, 268 Ind. 380, 382, 375 N.E.2d 228, 230 (1978) (failure to strike from list of counties submitted waives right to change of venue). However, as discussed in Part II, Wentz does not point to anything suggesting the jurors failed to render an impartial verdict, or that the result would have been different had the

---

**5.** Wentz divides his ineffective assistance claim into two issues. First, he argues that his counsel's errors denied him a fair trial under the Indiana and United States Constitutions. Second, he contends the postconviction court erred in denying relief due to his trial counsel's ineffectiveness.

trial taken place in another county. Therefore, Wentz has not demonstrated any prejudice as to this claim.

### 3. *Failure to Object to Expert's Qualifications*

 Laine testified that she was employed by the Indiana State Police as a Forensic Serologist and Hair Analyst, that she held an associate degree and a bachelor of science degree, that she attended an eighteen-week State Police training program for hair analysis, that she had passed the required proficiency tests, that she had attended the FBI Academy of Hairs and Fibers, and that she belonged to the Midwestern Association of Forensic Scientists. Although the question of Laine's qualification was never presented directly to the trial court, the court was within its discretion to conclude that Laine was qualified to provide expert testimony. There was no violation of Indiana Evidence Rule 702. Had Wentz's counsel objected to her qualifications, the result would have been the same. Thus, Wentz fails to demonstrate either substandard performance or prejudice from his counsel's failure to object. *Cf. Willsey v. State*, 698 N.E.2d 784, 794 (Ind.1998) ("When a claim of ineffective assistance of counsel is based on counsel's failure to object, the defendant must show that a proper objection would have been sustained.").

### 4. *Inadequate Representation at Sentencing*

 Wentz's strongest claim is that his counsel inadequately represented him at sentencing. Indeed, at the initial sentencing it was the prosecutor, not Wentz's counsel, who first expressed concern regarding the consecutive sentences, although Wentz's counsel did object to the consecutive sentences imposed at the second hearing. Additionally, his counsel raised no objection to the imposition of sentences for both felony murder and kidnapping, the underlying felony. In Part IV, we address and correct the sentencing errors. The record in this case supports a presumptive sentence for murder. Therefore, there remains no prejudicial effect from any deficient representation at sentencing.

### B. *Claims that Fail to Demonstrate Deficient Representation*

### 1. *Wentz's Decision to Testify*

 Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052. Even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* at 689, 104 S.Ct. 2052. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind.2001).

 Wentz's counsel made a strategic call that it would be in Wentz's best interest to testify and explain his limited role in this series of crimes. *Whitener v. State*, 696 N.E.2d 40, 42 (Ind.1998) ("The determination of whether or not a defendant should testify is a matter of trial strategy."). Further, although Wentz now contends that he should not have taken the stand, he did so freely. We cannot say it was unreasonable strategy to have Wentz testify in an attempt to distinguish himself from Henson.

### 2. *Attacks on Wentz's Credibility*

On redirect examination, the following exchange took place between Wentz and his counsel:

Q. Now, at the time you made the statement at the police station, after the wreck and after these incidents happened, did you have a lawyer?

A. No, I didn't have one.

Q. Were you sworn under oath when you were giving that statement to police?

A. No, I wasn't.

Q. Did you answer all their questions?

A. I believe so, until such time as ...

Q. Well, did you answer all their questions?

A. Yes.

This prompted the following questions from the State on re-cross examination:

Q. Mr. Wentz, Mr. Davis just asked you if you answered all the police's questions and you said you did; isn't that right?

A. Right.

Q. But, in fact, you didn't; did you?

A. Uh, I did until the point when my dad advised me that we should go ahead and get a lawyer.

Q. Okay. So, the police were questioning you about this crime and, after they began questioning you, you said on the advice of your father, I don't want to answer anymore questions?

A. At that time.

Wentz contends that the State's questions concerning his silence following the administration of Miranda warnings violated *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and that his counsel's failure to object to that line of questioning constituted ineffective assistance of counsel.

In *Doyle,* the United States Supreme Court held that using a defendant's post-arrest silence to impeach an exculpatory story told for the first time at trial violated the defendant's due process rights. However, as this Court explained in *Vitek v. State,* 750 N.E.2d 346, 350 (Ind.2001), "[a]lthough evidence of a defendant's post-Miranda silence is generally not admissible, the defendant may open the door to its admission." One example of that opening is when a defendant testifies on direct examination that he cooperated fully with police. *Id.* at 351; *accord United States v. Fairchild,* 505 F.2d 1378 (5th Cir.1975). That is exactly what Wentz attempted to do on redirect examination here, when he testified that he answered all of the police's questions. Therefore, there was no *Doyle* violation. Because there was no *Doyle* violation, there was nothing to which Wentz's counsel could object, and therefore no ineffective assistance.

### C. *Waived Claims*

We note that Wentz also presents a blanket claim of inadequate preparation to support his ineffective assistance of counsel argument. However, except for the contentions addressed above, Wentz never explains why the other instances of "inadequate preparation" he cites satisfy either prong of *Strickland.* Specifically, Wentz does not explain how his counsel's case preparation—adequate or not—resulted in prejudice to the outcome of his case. At no point does he make a cogent argument in support of a reasonable probability that, but for counsel's errors, the result of his trial would have been different. Therefore, he has waived appellate review of this claim. Ind.App. R. 46(A)(8); *Dye v. State,* 717 N.E.2d 5, 13 (Ind.1999).

Wentz also contends his counsel was ineffective by failing to "make timely

objections," allowing the State to ask leading questions, and allowing the State to use exhibits in opening argument and during trial that had not been admitted into evidence. However, Wentz cites the entirety of the record to support these contentions and fails to make any argument as to why these instances constituted deficient representation or how they were prejudicial to the outcome of his case. Therefore, appellate review of these claims is also waived. *Id.*

Wentz contends that his trial counsel elicited damaging testimony from him as well as other defense witnesses. However, Wentz fails to explain why the cited portions of the elicited testimony were "damaging." We presume he means that the testimony given, primarily by him and his father, helped establish the fact that Wentz owned a shotgun and BB gun. However, these facts were given in the context of an attempt to establish that Wentz used them for hunting and camping purposes, and that Wentz's plan when he left home on July 25 was to go camping, not to commit murder. Wentz also argues that his testimony established that he committed crimes. However, the cited portions of testimony, though establishing Wentz's role in the commission of some crimes, are largely explanations attempting to limit his role compared to Henson's. In any event, the judgment to, in effect, concede responsibility for lesser offenses in an effort to avoid a murder conviction is not per se deficient representation.

Finally, Wentz claims that, during a break in his cross-examination by the State, his counsel told him to change his prior testimony as to when he saw the shotgun taken out of the car at the murder scene. However, he fails to explain how this action prejudiced the outcome of the trial. Our review of Wentz's "changed" testimony finds only a brief exchange with the prosecutor where Wentz states he wants to clarify earlier testimony. There is no intimation by the prosecutor in the course of that exchange, however, that Wentz had lied. The postconviction court concluded that Wentz "failed to meet his burden in claiming that Mr. Wentz changed his account or testified in any manner based on his attorney's suggestions." We agree.

## Conclusion

The judgment of the trial court and the denial of postconviction relief are affirmed in all respects, except as to sentencing. We vacate Wentz's sentence for kidnapping and remand with instructions to impose concurrent sentences for all remaining counts.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, concur.