## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 28 2017, 7:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**APPELLANT PRO SE**

David Earl Ison
Carlisle, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Earl Ison,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

December 28, 2017

Court of Appeals Case No.
24A05-1706-PC-1510

Appeal from the Franklin Circuit Court

The Honorable J. Steven Cox, Judge

Trial Court Cause No.
24C01-1407-PC-630

**Bailey, Judge.**

# Case Summary

Following an order of remand by this Court[1] for additional findings by the post-conviction court, pro-se Appellant David Earl Ison ("Ison") appeals the denial of his amended petition for post-conviction relief, which challenged his convictions for five counts of Murder.[2] We affirm.

## Issues

Ison presents two issues for review:

I.      Whether he entered his pleas involuntarily due to a lack of waiver of his *Boykin*[3] rights; and

II.     Whether his trial counsel was ineffective for engaging in deception to secure a plea agreement and for failing to ensure that Ison affirmatively waived his *Boykin* rights.

## Facts and Procedural History

The facts underlying Ison's guilty pleas, together with the procedural history, were set out in the prior appeal from the denial of Ison's petition for post-conviction relief:

---

[1] *See Ison v. State*, 71 N.E.3d 1174 (Ind. Ct. App. 2017).

[2] Ind. Code § 35-42-1-1.

[3] *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (holding that it was reversible error for the trial court to accept a guilty plea without an affirmative showing that it was an intelligent and voluntary plea). *Boykin* requires that an accused be made aware of his right against self-incrimination, his right to trial by jury, and his right to confront his accusers. *Id.* at 243. Waiver cannot be presumed from a silent record. *Id.*

On September 25, 2011, Roy Napier, Angela Napier, Melissa Napier, Jacob Napier, and Henry Smith were murdered in Franklin County. Shortly thereafter, Ison became a suspect and blood and DNA evidence were recovered from his home, as well as two firearms that had been used in the shootings. At the time of the killings, Ison was on probation for unrelated convictions on ten counts of burglary. In sum, Ison had twenty prior felony convictions.

The State charged Ison with five counts of murder (Counts I through V) on October 7, 2011. Franklin County Prosecutor Melvin Wilhelm (Prosecutor Wilhelm) struggled with whether to seek the death penalty and eventually consulted with the Indiana Prosecuting Attorneys Council's capital litigation committee, which advised him to seek the death penalty. Thereafter, Prosecutor Wilhelm spoke with Ison's trial counsel, Hubert Branstetter (Attorney Branstetter), regarding the possibility of a plea agreement in which Ison would plead guilty to life imprisonment without parole (LWOP) to avoid the death penalty. A document was prepared by prosecutor Wilhelm and presented to Ison by Attorney Branstetter. Ison signed the document, agreeing to LWOP. This document, which Ison believed to be a plea agreement, was never filed with the trial court.

On February 3, 2012, the State filed an amended information adding an LWOP count (Count VI). The trial court held an initial hearing regarding Count VI on March 1, 2012, which transformed into a guilty plea hearing when Ison pled guilty to Count VI and changed his plea to guilty with regard to Counts I though [sic] V. The trial court advised Ison that this would necessarily require him to be in prison for the rest of his natural life. After briefly inquiring into Ison's mental state and ability to understand the proceedings, the trial court engaged Ison in the following discussion:

COURT: The guilty plea that you're offering is your own free choice and decision?

DEFENDANT: Yes, sir.

COURT: No one has offered you any promises or anything of value to get you to plead guilty?

DEFENDANT: No, sir.

COURT: Forced, threaten[ed], place in you [sic] in fear, anyone else you know been forced, threaten[ed], or placed in fear to get you to plead guilty?

DEFENDANT: No, sir.

COURT: Still your intention to plead guilty?

DEFENDANT: Yes, sir.

*Petitioner's Exhibit A.* at 6-7. Prosecutor Wilhelm then detailed the factual basis for each of the counts, which Ison admitted. At no point during the hearing did Ison expressly waive his *Boykin* rights. In accepting the pleas, however, the court stated: "The Court will find you're forty-six years of age. You understood the nature of the charge [to] which you plead guilty, the possible sentence you could receive. That your plea of guilty is freely and voluntarily made and there's a factual basis for your plea of guilty." *Petitioner's Exhibit A* at 9-10. At the sentencing hearing on March 14, 2012, the trial court sentenced Ison to LWOP.

Ison, pro se, filed his original PCR petition on June 26, 2014. Thereafter, on October 19, 2015, Ison filed a motion to amend

his PCR petition, alleging for the first time that his trial counsel was ineffective and that his plea was not made knowingly, intelligently, and voluntarily. Ison made a number of additional pro-se filings and even filed an improper interlocutory appeal, which this court dismissed on March 4, 2016. This was followed by Ison's filing a flurry of additional documents.[4] Though there is some ambiguity in the record, it appears that Ison filed a "Supplemental Motion and Verified Amended PCR" in April 2016, which asserted a number of claims including ineffective assistance of counsel and involuntariness of his plea.

Ison's post-conviction hearing commenced on June 29, 2016. The post-conviction court *sua sponte* appointed standby counsel for Ison during the hearing. Ison testified at the hearing and detailed his claims. He emphasized that his primary claims were ineffective assistance of counsel and involuntariness of his plea. He asserted several arguments associated with these two related claims. At the conclusion of his case, Ison briefly addressed three additional claims.

On July 1, 2016, the post-conviction court issued its order denying Ison's PCR petition. In the order, the court expressly considered only the three grounds for relief raised in Ison's original petition filed in 2014. These grounds did not include ineffective assistance of counsel or the related claim regarding his guilty plea. *Appendix* at 21.

*Ison*, 71 N.E.3d at 1175-76.

---

[4] Ison also filed an original action with our Supreme Court, which was promptly dismissed as improper by the Court on May 9, 2016.

[4] Contrary to the post-conviction court's conclusion, this Court found that Ison's ineffectiveness claim and related claim had been timely filed:

> Pursuant to Indiana Post-Conviction Rule 1(4)(c), a "petitioner shall be given leave to amend the petition as a matter of right no later than sixty [60] days prior to the date the petition has been set for trial." Ison filed the 2015 Amendment before a trial date was even set, and, thus, well within the period in which he could amend his PCR petition as a matter of right. Accordingly, the 2015 Amendment was properly before the trial court, as well as possibly other subsequent amendments.
>
> At the post-conviction hearing held on June 29, 2016, Ison presented his case and focused on the issues of ineffective assistance of trial counsel and involuntariness of his guilty plea, which were first alleged in the 2015 Amendment. In addition to the 2015 Amendment, the court acknowledged at the hearing that it had a lengthy document filed by Ison on April 14, 2016, which Ison claimed was another amendment raising additional issues.
>
> In its brief order issued two days after the post-conviction hearing, the court indicated for the first time that it would not consider any of Ison's claims raised in filings made after the original PCR petition filed in 2014. Without any explanation, the court concluded that the only petition properly before it was the original petition. This was erroneous.

*Ison*, 71 N.E.3d at 1177. On March 14, 2017, we remanded the case, directing the post-conviction court "to make specific findings of fact and conclusions of law with respect to Ison's claims of ineffective assistance of trial counsel and involuntariness of his guilty plea. *Id.* at 1178.

[5]     On June 9, 2017, the post-conviction court issued its Order on Remand.  The post-conviction court entered findings of fact, conclusions thereon, and an order denying Ison post-conviction relief.  This appeal ensued.

# Discussion and Decision

## Standard of Review

[6]     Our standard of review in post-conviction proceedings is well-settled:

> A petitioner seeking post-conviction relief bears the burden of establishing grounds for relief by a preponderance of the evidence.  Ind. Post-Conviction Rule 1(5).  A petitioner who is denied post-conviction relief appeals from a negative judgment, which may be reversed only if "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court."  *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002), *cert. denied*, 540 U.S. 830, 124 S.Ct 69, 157 (2003).  We defer to the post-conviction court's factual findings, unless they are clearly erroneous.  *Id.* at 746.

*Collins v. State*, 14 N.E.3d 80, 83 (Ind. Ct. App. 2014).

## Involuntariness of Pleas

[7]     Ison argues that his guilty pleas were involuntary because he did not understand that he was waiving his *Boykin* rights and he did not understand that he could potentially have received a minimum, forty-five-year sentence for Murder,[5] after

---

[5] *See* I.C. § 35-50-2-3.

weighing of aggravators and mitigators, had he gone to trial. A post-conviction proceeding is a proper vehicle for challenging a guilty plea, and we look at the evidence before the post-conviction court that supports its determination that a guilty plea was voluntary, knowing, and intelligent. *Moffitt v. State*, 817 N.E.2d 239, 248-49 (Ind. Ct. App. 2004), *trans. denied*.

[8] On remand, the post-conviction court made factual findings that Ison had, at the initial hearing on Amended Count VI, been advised by the trial court of his rights and potential penal consequences. Second, the post-conviction court concluded that Ison, having entered numerous guilty pleas in the past, must have understood that he was waiving his *Boykin* rights by pleading guilty.

[9] Ison now contends, "If I would have been given my *Boykin* rights before I pled guilty to counts I II III IV V, I argue I would have never plead [sic] guilty"; "Also the way the hearings were done mislead [sic] me: making me think that I did not have the *Boykins* [sic] for counts I II III IV V, only for Count VI they gave them to me in the context of count VI I didn't even know I had them for counts I II III IV V"; and "If I knew I had the *Boykin* rights for Counts I II III IV V, I would have insisted on a jury trial." Appellant's Brief at 13, 14, 17. As best we can discern Ison's contentions, he does not deny that he was given appropriate advisements at the initial hearing on Count VI; rather, he bifurcates counts, notes that the record does not reveal an explicit waiver on his part, and claims that his impairments from alcohol and drug use and psychiatric medications affected his ability to understand the proceedings.

"In considering the voluntariness of a guilty plea we start with the standard that the record of the guilty plea proceeding must demonstrate that the defendant was advised of his constitutional rights and knowingly and voluntarily waived them." *Turman v. State*, 271 Ind. 332, 392 N.E.2d 483, 484 (1979) (citing *Boykin*, 395 U.S. at 242). *Boykin* requires that a trial court accepting a guilty plea "must be satisfied that an accused is aware of his right against self-incrimination, his right to trial by jury, and his right to confront his accusers." *Dewitt v. State*, 755 N.E.2d 167, 171 (Ind. 2001) (citing *Boykin*, 395 U.S. at 243). The failure to advise a criminal defendant of his constitutional rights in accordance with *Boykin* prior to accepting a guilty plea will result in the reversal of the conviction. *Ponce v. State*, 9 N.E.3d 1265, 1270 (Ind. 2014) (citing *Youngblood v. State*, 542 N.E.2d 188, 188 (Ind. 1989)).

A defendant who demonstrates that the trial court failed to properly give a *Boykin* advisement during the guilty plea hearing has met his threshold burden for obtaining post-conviction relief. *Id.* However, the State may prove "that the petitioner nonetheless knew that he was waiving such rights." *Id.* at 1273. "And where the record of the guilty plea hearing itself does not establish that a defendant was properly advised of and waived his rights, evidence outside of that record may be used to establish a defendant's understanding." *Id.*

Ison insists that nothing short of his formal waiver after count-specific advisements in successive hearings is sufficient; however, "a formal advisement and waiver are not required." *Dewitt*, 755 N.E.2d at 171. Rather, the defendant "must have only known that he was waiving his *Boykin* rights by pleading

guilty." *Id.*[6] Here, before the entry of Ison's guilty pleas, he had been expressly informed of his *Boykin* rights. Later, at the sentencing hearing, Ison expressed his "understanding of the record to date," that is, he had been advised "by pleading guilty to those Counts you would be waiving those rights." (Sent. Tr. at 14.)

[13] At the post-conviction hearing, Ison testified in narrative form and, in relevant part, stated: "I didn't understand what exactly it was. All I knew is I was coming over here to plead guilty." (P-C.R. Tr. at 43.) However, Ison had been convicted of twenty prior felonies, primarily in guilty plea proceedings. As for Ison's claim that his substance use had rendered him unable to comprehend and remember prior advisements, it is belied by his assertions at the guilty plea hearing. The post-conviction court did not find Ison's claim of misunderstanding to be credible. We will not reweigh the evidence or determine credibility. "The post-conviction court is the sole judge of the evidence and the credibility of the witnesses." *Hall v. State*, 849 N.E.2d 466, 468-69 (Ind. 2006). We cannot say that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court.

---

[6] A panel of this Court has observed, "[a] signed plea agreement reciting that the defendant waives the right to a jury trial, the right to confront witnesses and the right against self-incrimination, is an adequate advisement to establish a knowing and voluntary waiver of rights." *Spencer v. State*, 634 N.E.2d 500, 501 (Ind. Ct. App. 1993). Here, however, there is no signed plea agreement of record.

# Ineffective Assistance of Trial Counsel

[14]    Ison also contends that his trial counsel was ineffective.  Specifically, Ison claims that his counsel conspired with the prosecutor and the trial court judge to withhold information as to the minimum sentence available and to manipulate Ison into agreeing to a LWOP sentence.  According to Ison, his attorney affirmatively misled him into thinking that a death penalty allegation had been formally filed, failed to properly pursue Ison's desire to withdraw his guilty pleas, and failed to ensure that Ison understood his right to appeal.

[15]    "When a defendant contests his guilty plea based on claims of ineffective assistance of counsel, we apply the … two-part test from *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)]." *Collins*, 14 N.E.3d at 87.  That is:

> To establish a claim of ineffective assistance of counsel, a convicted defendant must show (1) that counsel's performance was deficient such that it fell below an objective standard of reasonableness based on prevailing professional norms and (2) the defendant was prejudiced by counsel's deficient performance. [*Strickland*, 466 U.S. at 687].  When considering whether counsel's performance was deficient, the reviewing court begins with a "strong presumption" that counsel's performance was reasonable. *Id.* at 689.  A defendant is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

*Id.* at 86.

[16] Where a guilty plea is contested, our application of the first part, regarding counsel's performance, is largely the same. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The prejudice requirement, however, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, … the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

[17] We will not second-guess trial counsel's strategy and tactics unless they are so unreasonable that they fall outside objective standards. *See, e.g.*, *Benefield v. State*, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Wentz v. State*, 766 N.E.2d 351, 361 (Ind. 2002). And if we can dispose of a claim of ineffective assistance of counsel by analyzing the prejudice prong alone, we will do so. *Benefield*, 935 N.E.2d at 797 (citing *Wentz*, 766 N.E.2d at 360).

[18] Initially, we observe that Ison did not call his trial counsel as a witness at post-conviction proceedings. Thus, the post-conviction court was permitted to infer that Ison's counsel would not have corroborated Ison's allegations of deception, collusion, and intentional withholding of pertinent information. *See Dickson v. State*, 533 N.E.2d 586, 589 (Ind. 1989) (when trial counsel does not testify in post-conviction proceedings, the post-conviction court may infer that counsel would not corroborate petitioner's allegations). So, too, could the post-conviction court infer that trial counsel would not corroborate Ison's testimony

that he demanded that counsel attempt withdrawal of the guilty pleas and counsel reported back to Ison that he attempted withdrawal, but the judge flatly refused and said that Ison was fortunate to escape death.

[19] Without trial counsel's testimony or other witnesses, we are left with Ison's testimony that he would have insisted upon going to trial had he known that a death penalty request had not been formally filed and that a person convicted of murder could potentially receive a minimum sentence of forty-five years. A petitioner's subjective assertion that he would have declined to plead guilty does not establish a reasonable probability of a different outcome; there must be objective facts to show that a hypothetical reasonable defendant would have made a different decision. *Segura v. State*, 749 N.E.2d 496, 507 (Ind. 2001) (citing *Hill*, 474 U.S. at 59)).

[20] Ison was charged with five counts of murder. The circumstance of multiple murders made Ison eligible for the death penalty or LWOP, upon conviction. I.C. § 35-50-2-9(b)(8). The State appeared to have overwhelming evidence against Ison, including physical evidence, DNA evidence, and a statement from Ison's girlfriend, who claimed that she had been outside the residence at the time of the murders. Ison's purported motivation was his desire to obtain prescription drugs. He was on probation at the time of the murders. He had at least twenty prior felony convictions. Any expectation of leniency at sentencing would not have been objectively reasonable. The post-conviction court did not err in concluding that an objectively reasonable person would not have insisted upon going to trial.

As for Ison's claim that his counsel allowed Ison to plead guilty without advice and waiver of his *Boykin* rights, we have already concluded otherwise. Ultimately, counsel was instrumental in Ison's avoidance of the death penalty despite his clear eligibility. Ison has not established that counsel performed deficiently or that he was prejudiced.

# Conclusion

Ison has not demonstrated his entitlement to post-conviction relief on grounds of involuntariness of his pleas or the ineffective assistance of counsel. The post-conviction court did not erroneously deny Ison post-conviction relief.

Affirmed.

Kirsch, J., and Pyle, J., concur.