

**FILED**

Dec 30 2015, 7:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles S. Whitham,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 30, 2015<br><br>Court of Appeals Case No.<br>39A01-1504-CR-134<br><br>Appeal from the Jefferson Circuit Court<br><br>The Honorable W. Gregory Coy,<br>Special Judge<br><br>Trial Court Cause No.<br>39C01-1309-FA-883 |

**Najam, Judge.**

## Statement of the Case

[1]     Charles S. Whitham appeals his convictions for attempted murder, a Class A felony (Count I); aggravated battery, a Class B felony (Count II); criminal confinement, as a Class B felony (Count V); two counts of battery, each as a

Class C felony (Counts III and IV); and strangulation, a Class D felony (Count VI). Whitham raises three issues for our review, which we consolidate and restate as whether the trial court abused its discretion in the admission of certain evidence. We also raise *sua sponte* whether several of Whitham's convictions violated the constitutional prohibition against double jeopardy.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

On July 31, 2012, Whitham attacked and nearly killed his grandmother, Velma Brown, in her bedroom. Whitham grabbed Brown's hands and struck her with her own hands across her face and on her chest. Whitham told Brown that she "was too old" and that she "ought to die." Tr. at 75. Whitham then "put his hands on [Brown's] neck and squeezed," choking Brown on her bed. *Id.* at 76. Brown blacked out and at some point awoke on the floor of her bedroom but did not "know how long [she had] laid there." *Id.* at 77. When she was able to get up, she went to her granddaughter Sherry's house, and Sherry's husband called the police.

On September 9, 2013, the State charged Witham with attempted murder, a Class A felony (Count I); aggravated battery, a Class B felony (Count II); criminal confinement, as a Class B felony (Count V); two counts of battery, each as a Class C felony (Counts III and IV); and strangulation, a Class D felony (Count VI). Each of the State's charges was based on Whitham's July 31 attack on Brown.

[5] At his ensuing jury trial, the State called Brown to testify and asked her about times Whitham had attacked her prior to July 31. Brown testified to two prior incidents. First, she testified that, around the end of May 2012, Whitham had hit her across the left side of her head. Whitham's hit was so hard both of Brown's hearing aids fell out. Sherry later testified that she had helped Brown find the hearing aids after that incident. Second, Brown testified that, the day before the July 31 attack, Whitham had "jerked [her] out of the bed" by her evening gown, which tore. *Id*. at 64. Out of bed, Brown "slipped and hit [her] head on the corner of the chest of drawers," which caused a laceration on the side of her head. *Id.* Brown used her evening gown to clean up the blood from that laceration. The State had that gown, which was blood-stained, admitted into evidence.

[6] Later during the jury trial, the State called Dr. Dean Hawley to testify. Dr. Hawley is an expert in, among other things, clinical forensic medicine, which includes identifying strangulation injuries and determining their medical consequences. Dr. Hawley testified that he had reviewed photographs of the injuries Brown sustained on her neck that were taken immediately after the July 31 attack. According to Dr. Hawley, those photographs demonstrated "a ligature strangulation mark," that is, that the strangulation had occurred by use of an object rather than by hand. *Id.* at 359. Dr. Hawley testified that Brown's injury was "so severe . . . [t]he skin [wa]s completely wiped off . . . by the intensity of the pressure of the ligature around the neck." *Id.* Dr. Hawley further testified that unconsciousness in the victim likely occurred "within

seconds" of the strangulation, and that he had never seen an injury this severe in a nonfatal case. *Id.* at 361. When asked whether he had "an opinion as to . . . the source of that injury," Dr. Hawley opined: "I'm pretty comfortable saying that . . . this is a wire cord wrapped around the neck." *Id.* at 362.

[7] Also during the jury trial, the State introduced into evidence the contents of a phone conversation Whitham had had with his mother, Cheryl, while Whitham was incarcerated for the instant offenses. In that conversation, Whitham acknowledged having Cheryl tell Brown that he would relocate to Alabama if Brown agreed to not cooperate with the prosecution. As Whitham put it, Brown was the State's "prime witness" and "without her they can't do sh*t." State's Ex. 40 at 5.

[8] The jury found Whitham guilty as charged. The trial court entered its judgment of conviction against Whitham for each count, and it sentenced him to an aggregate term of thirty-six years in the Department of Correction. This appeal ensued.

## Discussion and Decision

### *Issue One: Admission of Evidence*

[9] On appeal, Whitham challenges the trial court's admission of Brown's testimony regarding the two pre-July 31 attacks, Dr. Hawley's testimony, and the jailhouse phone conversation. As our supreme court has explained:

> Generally, a trial court's ruling on the admission of evidence is accorded a great deal of deference on appeal. Because the trial

court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and only reverse if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.

*Hall v. State*, 36 N.E.3d 459, 467 (Ind. 2015) (citations and quotation marks omitted). With that standard in mind, we turn to Whitham's arguments on appeal.

*Prior Incidents*

[10] Whitham first asserts that the trial court erred when it permitted Brown to testify to two occasions before July 31, 2012, in which Whitham attacked Brown. In the trial court, Whitham objected on the ground that this testimony violated Indiana Evidence Rule 404(b), which provides in relevant part as follows:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

>> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

> (B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

The State responded to Whitham's Rule 404(b) objection on the ground that Brown's testimony regarding the prior acts was properly admissible to show "the relationship between the parties and the defendant's motive, which the State allege[d] to be hostility." Appellant's App. at 282. The trial court agreed with the State and overruled Whitham's objection.

[11]    As we have explained:

> [Indiana Evidence Rule 404(b)] is designed to prevent the jury from assessing a defendant's present guilt on the basis of his propensities—the so-called "forbidden inference." . . .
>
> In assessing the admissibility of 404(b) evidence a trial court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."
>
> "[P]roof of the defendant's motive to commit the charged crime lends itself to three legitimate theories of logical relevance." 1 [Edward J.] Imwinkelried, [Uncharged Misconduct Evidence] § 5:35 (1999). "Evidence of motive may be offered to prove that the act was committed, or to prove the identity of the actor, or to prove the requisite mental state." 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5240 (1978).

When evidence of motive is offered for those purposes, "[n]umerous cases have held that where a relationship between parties is characterized by frequent conflict, evidence of the defendant's prior assaults and confrontations with the victim may be admitted to show the relationship between the parties and motive for committing the crime." *Iqbal v. State*, 805 N.E.2d 401, 408 (Ind. Ct. App. 2004) (citing *Hicks [v. State]*, 690 N.E.2d [215,] 222 [(Ind. 1997)]; *Haggenjos v. State*, 441 N.E.2d 430, 431 (Ind. 1982)); *see also* 1 Imwinkelried, *supra*, § 4:19 (2008) ("When the uncharged acts of domestic violence are directed against the same spouse or partner alleged in the pending charge, there is little or no need to invoke character reasoning in order to justify the admission of the evidence . . . . [T]he trial judge can readily admit the evidence on a noncharacter motive theory; the uncharged acts evidence hostility toward the victim, and in turn that hostility may be the motive for the charged act of domestic violence.").

*Embry v. State*, 923 N.E.2d 1, 9 (Ind. Ct. App. 2010) (some citations omitted; alterations and some omissions in original), *trans. denied*.

[12]  We cannot say that the trial court abused its discretion when it admitted Brown's testimony of the two prior attacks to show Whitham's motive for the July 31 attack. The Indiana Supreme Court has made clear that "hostility is a paradigmatic motive for committing a crime." *Hicks*, 690 N.E.2d at 222 (quotations omitted). And where the defendant and the victim have a frequently hostile relationship, evidence of those prior hostilities "are . . . usually admissible" under Rule 404(b). *Id.* at 222-23. Here, Brown's testimony regarding the two pre-July 31 attacks demonstrated Whitham's pattern of hostility towards Brown and Whitham's motive for the July 31

attacks.  Thus, we cannot say that the trial court abused its discretion when it admitted this testimony under Rule 404(b).[1]  We also note that Whitham does not challenge the admission of this evidence under Rule 403 on appeal.

*Dr. Hawley's Testimony*

[13]  Whitham next asserts that the trial court improperly allowed Dr. Hawley to opine that Brown had been the victim of ligature strangulation, which Whitham characterizes as "speculation and not sufficiently reliable."  Appellant's Br. at 13.  In essence, Whitham argues that Dr. Hawley's opinion was unfounded because Brown never complained about having been strangled by a ligature; because Dr. Hawley never personally examined Brown; because Brown was not treated for ligature strangulation following the July 31 attack; and because Dr. Hawley could not rule out the possibility that the marks on Brown's neck were caused by the prior incident in which Whitham had pulled Brown by her evening gown.

[14]  But Dr. Hawley did rely on photographic evidence of Brown's injuries, and his qualifications as an expert were well established.  As our supreme court has recognized, "[d]octors often testify about the injuries depicted in photographs even though they were not present when the pictures were taken and did not

---

[1]  In his brief on appeal, Whitham also asserts that it is not clear how much time passed between the prior events and the charged conduct, and that "the prior bad conduct . . . was not of a substantially similar nature" to the charged conduct.  Appellant's Br. at 11.  But our supreme court has held that these concerns "do not render 404(b) evidence per se inadmissible."  *Hicks*, 690 N.E.2d at 222.

personally examine the injuries depicted." *Malinski v. State*, 794 N.E.2d 1071, 1085 (Ind. 2003). Whitham's argument on appeal simply asks this court to substitute its judgment for the trial court's, which we will not do.[2] We cannot say that the trial court abused its discretion when it admitted Dr. Hawley's testimony.

*Jailhouse Phone Conversation*

[15] Whitham next asserts that the trial court abused its discretion when it permitted the State to introduce into evidence his jailhouse phone conversation with his mother. According to Whitham, this evidence was both irrelevant and unfairly prejudicial. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Evid. R. 401. However, a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Evid. R. 403.

[16] We cannot say that the trial court abused its discretion when it concluded that the phone call was relevant. In that phone call, Whitham admitted to his mother that, if Brown did not cooperate with the State, he would move to Alabama upon his release. Again, as Whitham put it, Brown was the State's "prime witness" and "without her they can't do sh*t." State's Ex. 40 at 5. This

---

[2] We also reject Whitham's cursory assertion that Dr. Hawley's testimony, "even if admissible, would tend to confuse the jury." Appellant's Br. at 14.

evidence tended to show Whitham's consciousness of guilt, which made it relevant. *E.g.*, *Robinson v. State*, 720 N.E.2d 1269, 1272 (Ind. Ct. App. 1999).

[17] We also reject Whitham's argument under Rule 403. At trial, Whitham requested and received a partial redaction of the phone call, yet on appeal he asserts that various portions of that conversation that remained unredacted unfairly prejudiced him. Because Whitham did not object to the admission of the redacted version of the phone call at trial, he has failed to preserve this argument for our review. *E.g.*, *Griffin v. State*, 16 N.E.3d 997, 1006 (Ind. Ct. App. 2014).

[18] In sum, we cannot say that the trial court abused its discretion in the admission of evidence.

### Issue Two: Double Jeopardy

[19] We *sua sponte* conclude that the entry of conviction for five of the State's charges against Whitham violated his right to be free from double jeopardy. Although Whitham did not object on double jeopardy grounds at trial, questions of double jeopardy implicate fundamental rights and, as such, may be raised for the first time on appeal, or even by this court *sua sponte*. *See Smith v. State*, 881 N.E.2d 1040, 1047 (Ind. Ct. App. 2008). Whether convictions violate double jeopardy is a pure question of law, which we review de novo. *Rexroat v. State*, 966 N.E.2d 165, 168 (Ind. Ct. App. 2012), *trans. denied*.

[20] Entry of conviction for both an offense and its lesser-included offenses "is impermissible under both state and federal double jeopardy rules." *Wentz v.*

*State*, 766 N.E.2d 351, 359-60 (Ind. 2002). An offense is an inherently lesser included offense when it may be established by proof of the same material elements or less than all the material elements that define the "greater" crime charged. *Smith*, 881 N.E.2d at 1046. An offense is a factually lesser included offense when the charging instrument alleges "the means used to commit the crime charged include all of the elements of the alleged lesser included offense." *Id.* (citations omitted). In other words, to determine if an offense is factually included, a trial court will look to the defendant's conduct as charged. *Harvey v. State*, 719 N.E.2d 406, 411 (Ind. Ct. App. 1999).

[21]     Again, here the trial court entered its judgment of conviction against Whitham for attempted murder, a Class A felony (Count I); aggravated battery, a Class B felony (Count II); criminal confinement, as a Class B felony (Count V); two counts of battery, each as a Class C felony (Counts III and IV); and strangulation, a Class D felony (Count VI). Each charge arose from the July 31 attack. As the prosecutor explained to the jury during his closing argument:

> We have charged [Whitham] with attempt[ed] murder, and we have to prove these elements to you[:] that he acted with the specific intent to kill, that he manually applied pressure to her neck or applied a ligature to her neck and that impeded breathing or blood circulation, and that that conduct constitutes a substantial step towards the commission of attempt[ed] murder. I want to talk to you about intent to kill. These injuries represent a violent[,] forceful assault. The injury is not an accident. You heard testimony from Dr. [Hawley] that within a reasonable degree of medical certainty a ligature had been wrapped, looped around her neck twice, and that is evidenced by the two (inaudible) that you can see. The two (inaudible) showing that

the ligature was looped. There's only one reason you put a ligature around someone's neck and loop it twice. That's to kill them. This is not a gentle pull. You have to intend to pull that ligature tight enough to dig into the skin. That's not an accident . . . . That is acting with a conscious objective to kill. [Brown] was not conscious for this portion of the attack, and keep that in mind because the only reason you put a ligature around the neck of someone who's unconscious is to close the deal. . . . All of those pieces of evidence direct you to the conclusion that he intended to kill his grandmother that night. We have also charged Mr. Whitham with aggravated battery. We have to prove that he acted knowingly and intentionally and that he inflicted injury on [Brown] that created a substantial risk of death. Dr. Hawley testified that every strangulation creates a substantial risk of death. . . . We charged Mr. Whitham with battery by means of a deadly weapon using a ligature or his hands. The Court will give you an instruction on the definition of deadly weapon . . . but essential[ly] if an item or thing is used in a manner that is readily capable of inflicting serious bodily injury[] it can be a deadly weapon. We've charged him with battery causing serious bodily injury. When you batter someone and you cause them to go unconscious or you inflict asphyxiation on them, that's serious bodily injury. We've charged him with criminal confinement. She was on that bed. You better believe she was trying to get away. Eventually, she was able to, but what was stopping her was [Whitham] over her holding her by the hands, beating her with her own hands and choking her and using the ligature. The serious bodily injury, again, unconsciousness and asphyxiation. We have charged him finally with strangulation, and that is applying pressure to her throat or neck or her mouth or nose in a manner that impeded the normal breathing or blood circulation.

Tr. at 458-61.

[22] Each of Whitham's convictions below Count I, the Class A attempted murder conviction, is a lesser offense to that conviction. First, this court has long held that aggravated battery is an inherently lesser included offense to attempted murder. *See Meriweather v. State*, 659 N.E.2d 133, 141-42 (Ind. Ct. App. 1995), *trans. denied*. Thus, we reverse Whitham's conviction for Count II, aggravated battery, a Class B felony.

[23] Second, on the facts of this case, Count V, criminal confinement, is a factually lesser included offense to attempted murder. The charging information alleged that Whitham had committed attempted murder either when he intentionally manually applied pressure to Brown's neck and impeded her normal breathing or blood circulation or when he intentionally applied a ligature to her neck and impeded her normal breathing or blood circulation. Appellant's App. at 25. Likewise, the charging information alleged that Whitham had committed criminal confinement, as a Class B felony, when he knowingly or intentionally confined Brown, without her consent, in a manner that resulted in serious bodily injury, namely, Brown's unconsciousness or asphyxiation by manual and/or ligature strangulation. *Id.* at 26. During his closing argument, the prosecutor stated that the factual basis for the allegation that Whitham had "confined" Brown was that Whitham had been "over her holding her by the hands, beating her with her own hands and choking her and using the ligature." Tr. at 461. As the prosecutor made clear during his closing argument, it was impossible for the jury to have found Whitham guilty of attempted murder without having found the facts underlying the confinement charge to be true.

*See Harvey*, 719 N.E.2d at 412. In other words, there was no evidence of confinement beyond the confinement associated with the attempted murder. Thus, we reverse Whitham's conviction for Count V, criminal confinement as a Class B felony.

[24] Third, Counts III and IV, Whitham's Class C felony battery convictions, are also factually lesser included offenses to the attempted murder conviction. One of the battery charges alleged that Whitham had intentionally touched Brown in a rude, insolent, or angry manner by means of a deadly weapon, namely, a ligature or Whitham's hands. Appellant's App. at 25-26. The other alleged that Whitham had intentionally touched Brown in a rude, insolent, or angry manner, which resulted in serious bodily injury, namely Brown's unconsciousness or asphyxiation by manual and/or ligature strangulation. *Id.* at 26. In other words, again, it was impossible for the jury to have found Whitham guilty of attempted murder without having found the facts underlying the battery charges to be true. As such, we reverse Whitham's convictions under Counts III and IV, the Class C felony battery convictions.

[25] Fourth, and finally, Whitham's conviction for Count VI, strangulation, a Class D felony, is also a factually lesser included offense to the attempted murder conviction. This charge alleged that Whitham had intentionally applied pressure to the throat or neck of Brown in a manner that impeded her normal breathing or blood circulation. *Id.* at 26. As with the other charges, the facts in support of this allegation were included in the facts used by the State to show

that Whitham attempted to murder Brown. We reverse Whitham's conviction on Count VI.

[26] We briefly note that, because Whitham received concurrent sentences for each of his convictions, our holding that his lesser-included offenses must be vacated does not affect his total sentence. And Whitham's concurrent sentences do not affect our double jeopardy analysis. Concurrent sentences do not cure double jeopardy violations. *See, e.g.*, *Bunch v. State*, 697 N.E.2d 1255, 1257 (Ind. 1998); *Carroll v. State*, 740 N.E.2d 1225, 1233 (Ind. Ct. App. 2000), *trans. denied*.

[27] In sum, we affirm Whitham's conviction for Count I, attempted murder, a Class A felony. However, we reverse Whitham's convictions for aggravated battery, a Class B felony (Count II); criminal confinement, as a Class B felony (Count V); battery, as a Class C felony (Count III); battery, as a Class C felony (Count IV); and strangulation, a Class D felony (Count VI). Each of these offenses was a lesser-included offense to Whitham's conviction for attempted murder. Thus, we remand with instructions that the trial court vacate Whitham's lesser-included offenses.

[28] Affirmed in part, reversed in part, and remanded with instructions.

Riley, J., and May, J., concur.