## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 16 2019, 6:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael P. Quirk
Ana M. Quirk
Quirk & Hunter, P.C.
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert A. Walton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 16, 2019

Court of Appeals Case No.
18A-CR-2908

Appeal from the Delaware Circuit Court

The Honorable John M. Feick, Judge

Trial Court Cause No.
18C04-1608-F3-27

**Mathias, Judge.**

[1]     Following a jury trial in Delaware Circuit Court, Robert A. Walton ("Walton") was convicted of Level 3 felony conspiracy to commit criminal confinement,

Level 3 felony criminal confinement, four counts of Level 5 felony battery with a deadly weapon, Level 5 felony intimidation, two counts of Level 6 felony intimidation, and two counts of Level 6 felony criminal confinement. Walton appeals and presents two arguments, which we restate as: (1) whether the trial court erred by denying his motions for a directed verdict on the charges of conspiracy to commit criminal confinement and aggravated battery; and (2) whether his battery convictions constitute double jeopardy.

[2] We affirm.

## Facts and Procedural History

[3] At the time relevant to this appeal, John Keihn ("Keihn") and his girlfriend Michelle Knight ("Knight") lived with Catherine Morton ("Morton") in a house on North Broadway Street in Muncie, Indiana. Walton and his friend Benitez McCullum ("McCullum") worked at an auto shop also located on North Broadway Street. McCullum knew Keihn and Knight, and he and Walton would often visit them or invite them to parties held at the shop after work, where the revelers would drink alcohol.

[4] On August 10, 2016, Walton and McCullum went to Knight's house and invited her to come to a party at the shop. She agreed and went with them. When she entered the shop, Walton and McCullum used zip-ties to bind her hands and feet and accused her of being a police informant, an accusation which Knight denied. Unpersuaded by her denials, McCullum grabbed a pneumatic nail gun and threatened Knight with it, shooting blasts of

compressed air at her. He then gave the gun to Walton and told him to shoot Knight's legs if she did not admit to being an informant. Knight again denied being an informant, so Walton shot nails into her legs. Walton ultimately shot Knight in multiple parts of her body, including her left and right legs, her foot, her hip, and her torso. Knight went in and out of consciousness as Walton shot her with the nails.

[5]     Walton and McCullum then left Knight, bound and bleeding, in the shop as they went to get Keihn and Morton. They did the same to Keihn and Morton, binding them with zip-ties and accusing them of being police informants. As McCullum was questioning Keihn, he struck him in the head with a metal shovel. Walton and McCullum put duct tape on the mouths and necks of their three victims. After several hours, the assailants loosened the ties and tape. After McCullum left the shop, the three victims were able to escape,[1] and Knight was taken to the hospital for her injuries.

[6]     On August 16, 2016, the State charged Walton with thirteen counts: Count 1, Level 3 felony conspiracy to commit criminal confinement; Count 2, Level 3 felony criminal confinement; Count 3, Level 3 felony aggravated battery; Count 4, Level 3 felony aggravated battery; Count 5, Level 3 felony aggravated battery; Count 6, Level 3 felony aggravated battery; Count 7, Level 3 felony attempted aggravated battery; Count 8, Level 5 felony battery by means of a

---

[1] Walton later told the police that he loosened the ties and helped his victims escape. Knight testified, however, that McCullum told Walton to let them go.

deadly weapon; Count 9, Level 5 felony intimidation; Count 10, Level 3 felony criminal confinement; Count 11, Level 6 felony intimidation; Count 12, Level 3 felony criminal confinement; and Count 13, Level 6 intimidation.

[7] A three-day jury trial commenced on September 10, 2018. At the conclusion of the State's case-in-chief, Walton moved for a directed verdict on all counts. The trial court granted the motion only as to Count 7. At the conclusion of the trial, the jury found Walton not guilty on Count 8, but guilty as charged on Counts 1, 2, and 9–13, and guilty of the lesser-included offense of Level 5 felony battery with a deadly weapon on Counts 3–6.

[8] At a sentencing hearing held on November 7, 2018, the trial court sentenced Walton to seven years on Count 1; ten years on Count 2; five years each on Counts 3–6; and two years each on Counts 9–13. The trial court ordered the two-year sentence on Count 9 be served concurrently with the sentences imposed on Counts 1–3 and the two-year sentences on Counts 11–13 be served concurrently with the sentence imposed on Count 10, for an aggregate sentence of thirty-nine years of incarceration. Walton now appeals.

### I. Directed Verdicts

[9] Walton first claims that the trial court erred in denying his motion for directed verdicts as to Counts 1, 3, 4, 5, and 6. A motion for judgment on the evidence, also known as a directed verdict, is governed by Indiana Trial Rule 50(A), which provides in relevant part:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict. A party may move for such judgment on the evidence.

[10] A trial court must grant such a motion only if: (1) the record is devoid of evidence on one or more elements of the offense; or (2) the evidence presented is without conflict and subject to only one inference, which is favorable to the defendant. *Pavlovich v. State*, 6 N.E.3d 969, 980 (Ind. Ct. App. 2014), *trans. denied*. On appeal, our review of the denial of a motion for directed verdict/judgment on the evidence is essentially the same as review of a claim of insufficient evidence to support a conviction. *Id.* (citing *Edwards v. State*, 862 N.E.2d 1254, 1262 (Ind. Ct. App. 2007), *trans. denied.*); *see also Jones v. State*, 472 N.E.2d 1255, 1259 (Ind. 1985) ("[t]he standard of review for a denial of a Motion for Judgment on the Evidence and for a challenge of insufficiency of the evidence is the same.").

[11] When reviewing a claim that the evidence is insufficient to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses. *Harrison v. State*, 32 N.E.3d 240, 247 (Ind. Ct. App. 2015) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans. denied*. Instead, we respect the exclusive province of the jury to weigh any conflicting evidence. *Id*. We therefore consider only the probative evidence supporting the verdict and any reasonable inferences which may be drawn from this evidence. *Id*. We will

affirm if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Id.*

### A. Conspiracy to Commit Criminal Confinement

In Count 1, the State charged Walton with Level 3 felony conspiracy to commit criminal confinement. "A person conspires to commit a felony when, with intent to commit the felony, the person agrees with another person to commit the felony." Ind. Code § 35-41-5-2(a). Additionally, "[t]he state must allege and prove that either the person or the person with whom he or she agreed performed an overt act in furtherance of the agreement." *Id.* at § 2(b).[2] To prove criminal confinement, the State is required to prove that the defendant "knowingly or intentionally confine[d] another person without the other person's consent[.]" Ind. Code § 35-42-3-3(a). Criminal confinement is a Level 3 felony if it: "(A) is committed while armed with a deadly weapon; (B) results in serious bodily injury to a person other than the confining person; or (C) is committed on an aircraft[.]" *Id.* at § 3(b)(3).

Thus, to convict Walton of conspiracy to commit criminal confinement as charged, the State was required to prove that he, with the intent to commit the crime of criminal confinement, agreed with McCullum to commit criminal

---

[2] It is no defense to a charge of conspiracy that the person with whom the accused person is alleged to have conspired: (1) has not been prosecuted; (2) has not been convicted; (3) has been acquitted; (4) has been convicted of a different crime; (5) cannot be prosecuted for any reason; or (6) lacked the capacity to commit the crime. *Id.* at § 2(c).

confinement and that either he or McCullum committed one or more of the following overt acts: "1) obtain or retain duct tape, 2) obtain or retain zip ties, or 3) traveled to [Keihn and Knight's address on] N. Broadway, Muncie, IN[.]" Appellant's App. p. 31.

[14] On appeal, Walton claims that there was no evidence to prove that he committed any of these overt acts. He is incorrect. First, it was not required to prove that Walton personally engaged in any of these overt acts; all that was required was proof that either he or the person with whom he agreed, i.e. McCullum, committed one or more of these overt acts. *See* I.C. § 35-41-5-2(b).

[15] More importantly, the evidence adduced at trial establishes that Walton went with McCullum to Knight's home where they lured Knight to the shop. *See* Tr. Vol. 2, p. 51 (Knight testifying that Walton accompanied McCullum on the night they took her to the warehouse); Ex. Vol., State's Ex. 47 at 41:15 (Walton's interview with the police wherein he admits to walking to the house on North Broadway with McCullum). Thus, the State proved that Walton engaged in an overt act in furtherance of the conspiracy.

[16] In a one-sentence argument, Walton also claims: "the State must prove not just an inference of a Conspiracy but evidence of a mere relationship or association between parties is not sufficient." Appellant's Br. at 11 (citing *Johnson v. State*, 208 Ind. 89, 194 N.E. 619 (1935)). To the extent that Walton means that the State failed to prove the existence of an agreement between him and McCullum, we find such an argument to be waived for failure to make a cogent

argument. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]").

[17]    Waiver notwithstanding, Walton would not prevail, as there was evidence that supports a reasonable inference that he and McCullum agreed to confine Knight and the others. To establish a conspiracy, the State is not required to prove the existence of a formal, express agreement; instead the existence of such an agreement can be inferred from circumstantial evidence, including overt acts of the parties in furtherance of the criminal act. *Wallace v. State*, 722 N.E.2d 910, 913 (Ind. Ct. App. 2000); *see also Taylor v. State*, 86 N.E.3d 157, 164 (Ind. 2017) (noting that formal agreement to commit a crime is not required and circumstantial evidence implying such an agreement is sufficient to establish a conspiracy), *reh'g denied*.

[18]    Here, Walton and McCullum went to Knight's home and lured her to the shop. The moment she walked into the shop, Walton and McCullum grabbed her and tied her hands and feet with zip-ties. It is apparent from their coordinated behavior that this was not a spur-of-the-moment decision, but a pre-existing plan that they were executing. This circumstantial evidence is sufficient to show the existence of an agreement between Walton and McCullum to commit criminal confinement. *See Purvis v. State*, 87 N.E.3d 1119, 1126 (Ind. Ct. App. 2017) (holding that evidence was sufficient to establish an agreement between the co-conspirators to commit theft where the two were together during each

trip to the store, they stole the same kinds of items, concealed them in the same manner and location, and came and left in the same vehicle), *aff'd on reh'g*, 96 N.E.3d 123 (Ind. Ct. App. 2018); *Phares v. State*, 506 N.E.2d 65, 68 (Ind. Ct. App. 1987) (holding that evidence was sufficient to establish an agreement to commit robbery based upon the acts of the co-conspirators demonstrating the use of tactics and planning, i.e., waiting in the car outside a gas station, entering the station with an atlas, asking the attendant for directions as a diversionary tactic, and striking the attendant with a tire iron).

[19]     Because there was evidence sufficient to establish that Walton and McCullum agreed to commit criminal confinement and that Walton committed an overt act in furtherance of the conspiracy, the trial court properly denied Walton's motion for a directed verdict on the conspiracy count.

### B.     Battery

[20]     Walton also claims that the trial court should have granted his motion for directed verdicts on Counts 3–6, which alleged aggravated battery. Aggravated battery is defined as knowingly or intentionally inflicting injury on a person that creates a substantial risk of death or causes serious permanent disfigurement; protracted loss or impairment of the function of a bodily member or organ; or the loss of a fetus. Ind. Code § 35-42-2-1.5. Walton claims that there was no evidence that Knight suffered a substantial risk of death or that he caused the protracted loss or impairment of a bodily member or organ. This argument is specious.

Walton used a pneumatic nail gun to shoot nails into Knight's legs, foot, hip, and torso. Walton emphasizes that the State's own medical witness testified that the nails only caused a low risk of death to Knight. But the evidence also indicated that Knight had to undergo a six-and-one-half-hour surgery in an attempt to remove the nails from her body. The two nails in her hip could not be removed and remain in her body. One of the nails also went through an artery in her leg. This required an arterial stent to be placed in her leg, and Knight must now take aspirin to prevent a blood clot from forming in the stent. Some of the nails also caused nerve damage, and now Knight has numbness in parts of her body. She also has scars from the nails and the surgery. From this, a reasonable jury could conclude that Walton suffered the protracted loss or impairment of a bodily member or organ and/or serious permanent disfigurement. Thus, the trial court properly denied Walton's motion for directed verdicts on the aggravated battery counts.[3]

---

[3] Although the State charged Walton with aggravated battery, the jury ultimately convicted him of four counts of the lesser-included offense of battery with a deadly weapon. To the extent that Walton claims that there was insufficient evidence to support his convictions for battery with a deadly weapon, this argument also fails. To prove that Walton committed Level 5 battery with a deadly weapon, the State was required to prove that he knowingly or intentionally touched Knight in a rude, insolent, or angry manner and committed the offense with a deadly weapon. Ind. Code § 35-42-2-1(c), (g). "Deadly weapon" is defined to include "[a] destructive device, weapon, device, taser . . . or electronic stun weapon . . . , equipment, chemical substance, or other material that in the manner it: (A) is used; (B) could ordinarily be used; or (C) is intended to be used; is readily capable of causing serious bodily injury." Ind. Code § 35-31.5-2-86(a)(2). "Serious bodily injury" is defined in turn as: "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus. Ind. Code § 35-31.5-2-292.

From the evidence that Walton repeatedly shot Knight with a nail gun in multiple parts of her body, the jury could conclude that Walton battered Knight with the nail gun. And given the seriousness of Knight's injuries, the jury could reasonably conclude that the nail gun was a deadly weapon because it was used in a manner that was readily capable of causing serious bodily injury, i.e., permanent or protracted loss or impairment of

## II. Double Jeopardy

[22]    Walton next argues that his four convictions for battering Knight with a deadly weapon constitute double jeopardy. Walton's argument is, at best, under-developed. He cites only one case, but does not explain how, or under what legal test, his convictions constitute double jeopardy. The State argues that Walton waived this argument by failing to fully develop it and cite appropriate authority. We are inclined to agree. Nevertheless, we often address issues of double jeopardy sua sponte. *Whitham v. State*, 49 N.E.3d 162, 168 (Ind. Ct. App. 2015), *trans. denied*. We will therefore attempt to address Walton's double jeopardy argument as best we can, despite his failure to fully develop his argument.[4]

[23]    As we recently summarized in *Smith v. State*, 129 N.E.3d 266, 269 (Ind. Ct. App. 2019):

> Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Two offenses are the same offense for double jeopardy purposes if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Under the actual

the function of a bodily member or organ. Thus, the evidence was sufficient to support Walton's convictions for battery with a deadly weapon.

[4] Whether convictions constitute double jeopardy is a pure question of law. *Whitham*, 49 N.E.3d at 168. To the extent that Walton argues that the trial court should have permitted him to argue double jeopardy to the jury, this argument is misplaced. A jury may find a defendant guilty on multiple counts that may constitute double jeopardy, but the remedy for this is either to not enter judgment of conviction on the offending verdicts or to vacate any conviction already entered on the offending verdicts.

evidence test, "the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts." To find a double jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense."

(quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)).

[24] Under the *Richardson* actual evidence test,[5] convictions for two or more offenses may constitute double jeopardy if the defendant demonstrates a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of one offense may also have been used to establish the essential elements of the second offense. *Chappell v. State*, 966 N.E.2d 124, 131 (Ind. Ct. App. 2012) (citing *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008)), *trans. denied*. But the fact that the same evidence may have been used to establish a single element of each of two or more offenses does not constitute a double jeopardy violation. *Hines v. State*, 30 N.E.3d 1216, 1221 (Ind. 2015) (citing *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002)).

[25] Application of the actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective. *Lee*, 892 N.E.2d at 1234. On appeal, we

---

[5] The statutory elements test does not apply where multiple charges are based on a single statute. *Rexroat v. State*, 966 N.E.2d 165, 169 (Ind. Ct. App. 2012), *trans. denied*. Thus, we focus on the actual elements test.

therefore consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel. *Id*. The term "reasonable possibility" "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id*. at 1236.

[26] Here, there was no reasonable probability that the actual evidentiary facts used by the jury to establish the essential elements of one of Walton's convictions for battery were also used to establish the essential elements of his other convictions for battery. The State artfully drafted the battery charges to allege separate acts of shooting Knight: in her left leg, right leg, torso, and foot. The State presented evidence detailing each of these injuries—both Knight's testimony and the testimony of her treating physician. And, during its closing statement to the jury, the State clearly delineated the separate evidence supporting each of the battery charges. *See* Tr. Vol. 3, pp. 32–36. There was therefore no reasonable possibility that the jury used the evidentiary facts supporting one of Walton's battery convictions to also support the other battery convictions. Accordingly, his battery convictions do not constitute double jeopardy under the actual evidence test.

## Conclusion

[27] The State presented evidence sufficient to support Walton's conviction for conspiracy to commit criminal confinement. Accordingly, the trial court properly denied his motion for a directed verdict on this count. The State also presented evidence from which a reasonable jury could have concluded that he

was guilty of aggravated battery. Therefore, the trial court also properly denied his motion for a directed verdict as to the aggravated battery charges. To the extent that Walton challenges the sufficiency of the evidence to support his convictions on the lesser-included offense of battery with a deadly weapon, this argument too fails, as there was evidence showing that the nail gun was used in a manner readily capable of causing serious bodily injury. Lastly, Walton's four convictions for battery with a deadly weapon against Knight do not constitute double jeopardy under the actual evidence test, as there was no reasonable probability that the evidentiary facts used by the jury to establish the essential elements of one of the battery convictions may also have been used to establish the essential elements of the other battery convictions. We therefore affirm the judgment of the trial court.

[28] Affirmed.

Robb, J., and Pyle, J., concur.