## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2020, 9:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Hanson
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Edward M. Hampton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 31, 2020

Court of Appeals Case No.
19A-CR-1456

Appeal from the Allen Superior
Court

The Honorable David M. Zent,
Judge

Trial Court Cause No.
02D05-1903-F3-10

**Crone, Judge.**

# Case Summary

[1] Edward M. Hampton appeals his conviction and sentence for level 3 felony robbery following a bench trial at which he represented himself pro se. He argues that the trial court erred by failing to adequately advise him regarding the scope of cross-examination if he decided to testify and that his sentence is inappropriate based on the nature of the offense and his character. We conclude that Hampton has waived his claim of trial court error and that he has failed to carry his burden to show that his sentence is inappropriate. Accordingly, we affirm Hampton's conviction and sentence for level 3 felony robbery. However, because the trial court attempted to avoid double jeopardy violations by merging two other counts on which Hampton was found guilty into the robbery count, we remand with instructions for the trial court to vacate Count II, level 5 felony battery, and Count III, level 6 felony criminal recklessness.

# Facts and Procedural History

[2] On the evening of February 25, 2019, Hampton and his girlfriend Olivia Johnston went to a hotel room where Jason Hager and several other people were present. Hager knew Hampton and Johnston from previous interactions. Hampton was very angry and approached Hager holding a knife and repeatedly demanding his money. The knife had a "wooden grain like pattern on it." Tr. Vol. 2 at 53. Hampton put his hand on Hager's shoulder and "put the knife directly to [Hager's] chest[,]" pressing the tip of the knife hard "enough [for Hager] to know that [Hampton] meant business." *Id*. at 51-52. Hampton kept

demanding his money, and Hager kept telling Hampton that he did not know what Hampton was talking about. Hager began to get "very scared[,]" pulled out his wallet, and started handing money to Johnston, who was standing behind Hampton. Hampton "kept on getting more forceful and his voice got louder." *Id*. at 52. Hampton came at Hager "hard … with the knife and it went into [Hager's] hip." *Id*. The knife punctured Hager's skin, and he began to bleed. Hager was "[v]ery, very afraid[,]" and handed Johnston his wallet. *Id*. Hager pleaded with them to stop. Johnston went through Hager's wallet, grabbed the rest of the money, and returned the wallet to Hager. Hager limped from the room with blood flowing out of his hip to seek help. Someone at the hotel across the street called the police.

[3] Fort Wayne Police Officer Joshua Franciscy responded to the call and found Hager, who appeared to be in a great deal of pain, lying on his side with blood on his hands and clothes. Hager informed police that he had been stabbed and robbed by Hampton. Hager described Hampton as a skinny black male wearing a brown vest. Hager also provided a description of Johnston and the person who rented the hotel room where the robbery occurred. Hager was taken to a hospital by ambulance where he received stitches for the wound to his hip. While Hager was at the hospital, he identified Hampton and Johnston in photo arrays.

[4] From Hager's description of the person who rented the room where the robbery occurred, the police were able to learn the room number where Hager was stabbed. Officers went to the room, and Hampton, who fit Hager's description

of the perpetrator, opened the door. Officers asked Hampton who he was, and Hampton told them his name. Officers also identified Johnston as the woman described by Hager. Hampton and Johnston exited the room and stayed outside with Officer Franciscy while other officers entered the room to perform a protective sweep. In Johnston's pocket, police found a debit card with Hager's name on it and a folding knife with a wood grain handle and what appeared to be dried blood on the blade. Police contacted the person who rented the hotel room and received the person's consent to search the room. On the bed, police found Johnston's purse, which contained another debit card with Hager's name on it. Police also found a brown vest.

[5] In March 2019, the State charged Hampton with Count I, level 3 felony robbery; Count II, level 5 felony battery; and Count III, level 6 felony criminal recklessness. Hampton filed a motion to proceed pro se and a motion to waive jury trial. Following a hearing, the trial court granted both motions; the transcript of this hearing is not in the record before us. Hampton filed a motion to suppress all the physical evidence found in the hotel room, which the trial court denied. Hampton also filed a motion in limine to exclude his prior convictions. The State agreed with his request "with the exception of [Hampton's] qualifying impeachable convictions." *Id*. at 6. The trial court asked Hampton if he understood this response, and he answered affirmatively. The trial court then informed Hampton that it would grant his motion "with the exception of impeachable offenses." *Id*.

[6]     A bench trial was held. At the close of the State's evidence, the trial court asked Hampton what evidence he wanted to present. Hampton requested incorporation of all the evidence that he presented at the suppression hearing, which the trial court granted. *Id*. at 90. The trial court asked Hampton if he had any other evidence or testimony that he wanted to present, and Hampton said that he did not. The trial court asked him whether he was resting his presentation. Hampton responded that he had presented everything "other than just to come out and say somebody else did this." *Id*. at 91. The trial court asked Hampton if he wanted to testify. Hampton said that he did not want to testify. The trial court stated, "Okay, that – that's your right sir. That's fine." *Id*. Hampton inquired who would cross-examine him if he did testify. The trial court replied, "Probably the Prosecutor's Office. If you testify[,] they have the right to question you. Do you wish to testify? You have a right to not testify too." *Id*. Hampton answered, "Yeah, I'll testify." *Id*.

[7]     The trial court then swore Hampton in and asked him what he wanted to say. Hampton said, "I could just – if the – if the State has any question that they would like to ask me." *Id*. at 91-92. The trial court explained that the State could only ask him questions based on what his testimony was, and that there was a "scope limitation, so if you don't testify there's nothing for them to ask you." *Id*. at 92. Hampton began by saying that his testimony was exactly what he had been saying from the beginning. However, the remainder of his testimony was objected to by the State based on evidentiary rules, and the trial court sustained those objections. After Hampton rested his case, the trial court

told the prosecutor, "I don't know if there's anything for you to question him on based on that limited presentation." *Id*. at 93. The prosecutor said he would like to ask Hampton about some impeachable offenses, which the trial court permitted. The State began questioning Hampton about his prior impeachable offenses, and Hampton asked the trial court to exclude his prior convictions based on his motion in limine preventing the State from raising them. The trial court explained that the State could not have raised them if he had not testified, but because he had testified, the State could bring them up for impeachment purposes. *Id*. at 94. Hampton said, "But you stated that the only things that they would have to ask me about would be the thing that I talked about. I didn't bring up any criminal conversion." *Id*. The trial court responded, "The fact that you're testifying allows him to impeach you, sir." *Id*. The trial court permitted the State to offer evidence of Hampton's prior convictions for criminal conversion and burglary. At the conclusion of Hampton's bench trial, the trial court found him guilty as charged.

[8] A sentencing hearing was held. The trial court found that the nature of the crime, Hampton's criminal history consisting of ten prior felonies and twenty-two misdemeanors, and prior failed efforts at rehabilitation were aggravating factors. The trial court found no mitigating factors. The trial court stated that as to Counts II and III, "it was essentially one act[,]" and it would "merge" Counts II and III into Count I. *Id*. at 111. The trial court sentenced Hampton to fifteen years for Count I, level 3 felony robbery. This appeal ensued.

# Discussion and Decision

## Section 1 – Hampton has waived his claim that the trial court erred by failing to adequately advise him regarding the scope of cross-examination.

[9] Hampton contends that the trial court erred by failing to adequately advise him, a pro se defendant, regarding the scope of cross-examination, thereby undermining his knowing, intelligent, and voluntary waiver of his constitutional right not to incriminate himself. We begin by noting that although Hampton refers to his constitutional right against self-incrimination, he does not indicate whether he is relying on the United States Constitution or the Indiana Constitution. Further, he does not cite any cases that discuss the right against self-incrimination; all the cases he cites involve the right to counsel. Also, the standard of review he provides is for sufficiency of the evidence, which does not apply to this issue.[1] Based on these deficiencies, we conclude that he has waived this issue for review by failing to present a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that contentions in appellant's brief be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal); *Casady v. State*, 934

---

[1] In addition, he fails to place the standard of review in the argument section of his appellant's brief as required by Indiana Appellate Rule 46(A)(8)(b). Although the paragraph pertaining to the standard of review contains citations to published cases, he attributes the paragraph to a memorandum decision in contravention of Indiana Appellate Rule 65(D).

N.E.2d 1181, 1190 (Ind. Ct. App. 2010) (failure to cite rules of evidence and case law waived claim of improperly admitted evidence), *trans. denied* (2011).

[10] Waiver notwithstanding, Hampton's argument is unavailing. Hampton asserts that the trial court failed to explain that by testifying, Hampton "would waive his right to not incriminate himself and expose him to introduction of prior convictions for offenses of dishonesty as an exception to the relevant rules of evidence," and that but for that failure, he would not have testified. Appellant's Br. at 29. In support, he argues that the right against self-incrimination is as important as the right to counsel, which requires a trial court to advise a defendant of the dangers and disadvantages of self-representation so that any waiver of the right is done knowingly, voluntarily, and intelligently. *Wirthlin v. State*, 99 N.E.3d 699, 705 (Ind. Ct. App. 2018) (citing *Poynter v. State*, 749 N.E.2d 1122, 1126 (2001)), *trans. denied*.[2]

[11] Of course, a defendant's right against self-incrimination is important and legally significant, but the right to counsel is intended to protect that and other constitutional rights. As our supreme court has stated, "The purpose of the Sixth Amendment guarantee of representation is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional

---

[2] We observe that the trial court held a hearing on Hampton's request to proceed pro se, and determined that he knowingly, intelligently, and voluntarily waived his right to counsel. Hampton does not suggest that the trial court erred in making this determination. "[A] defendant who chooses to proceed pro se must accept the burdens and hazards of self-representation." *Warr v. State*, 877 N.E.2d 817, 823 (Ind. Ct. App. 2007), *trans. denied* (2008).

rights and to assure him the guiding hand of counsel at every step in the proceeding." *Koehler v. State*, 499 N.E.2d 196, 199 (Ind. 1986). The right to counsel is "probably the most important right a defendant has because that right can affect a defendant's ability to assert all his other rights and because most defendants do not have the professional legal skills necessary to represent themselves adequately." *Henson v. State*, 798 N.E.2d 540, 543-44 (Ind. Ct. App. 2003), *trans. denied* (2004). Accordingly, "to waive the constitutionally protected right to counsel, a defendant 'must knowingly and intelligently forgo those relinquished benefits' provided by counsel, and be advised of the potential pitfalls surrounding self-representation so that it is clear that 'he knows what he is doing and [that] his choice is made with eyes open.'" *Kubsch v. State*, 866 N.E.2d 726, 736 (Ind. 2007) (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)), *cert. denied* (2008). "Because the defendant is the one who must suffer the consequences of his decision as to counsel, he is entitled to choose his advocate–a lawyer or himself." *Houston v. State*, 553 N.E.2d 117, 118 (Ind. 1990). However, "a defendant who chooses to proceed pro se must accept the burdens and hazards of self-representation." *Warr v. State*, 877 N.E.2d 817, 823 (Ind. Ct. App. 2007), *trans. denied* (2008).

[12] Here, Hampton requested to proceed pro se, and the trial court held a hearing on the matter and determined that he knowingly, intelligently, and voluntarily waived his right to counsel. That process ensured that Hampton was aware that by choosing to represent himself, there was a danger that he would be unable to protect his rights as well as a skilled professional. Hampton does not

suggest that the trial court erred in making this determination. Yet, Hampton would have us impose a duty on the trial court to advise a pro se defendant of the advantages and disadvantages of taking the stand to ensure that the defendant is knowingly, intelligently, and voluntarily waiving his or her right against self-incrimination. However, whether a particular defendant should testify in a given case is a fact-sensitive determination based on a myriad of considerations that will often boil down to a question of strategy. To require a trial court to engage in such a question improperly places the trial court in the role of a defendant's attorney. Accordingly, we decline Hampton's invitation to impose upon the trial court a duty to advise a pro se defendant regarding the advantages and disadvantages of testifying. Moreover, we observe that the trial court did not say anything erroneous, and that Hampton had indicated that he understood when the trial court granted his motion in limine to exclude his prior convictions with the exception of his qualifying impeachable convictions. We find no error here. Therefore, we affirm Hampton's conviction.

## Section 2 – Hamptons has failed to carry his burden to prove that his sentence is inappropriate.

[13]    Hampton next asks us to reduce his sentence pursuant to Indiana Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result in

each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). In addition, as we assess the nature of the offense and character of the offender, "we may look to any factors appearing in the record." *Boling v. State*, 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). Hampton has the burden to show that his sentence is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

[14] Turning first to the nature of the offense, we observe that "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). Hampton was

convicted of a level 3 felony, which has a sentencing range of three to sixteen years and an advisory sentence of nine years. Ind. Code § 35-50-2-5. Hampton received a fifteen-year executed sentence for level 3 felony robbery. Level 3 felony robbery is defined as a knowing or intentional taking of property from another person or from the presence of another person by using or threatening the use of force on any person or by putting any person in fear resulting in bodily injury to any person other than a defendant. Appellant's App. Vol. 2 at 2; Ind. Code § 35-42-5-1(a). Here, Hampton, armed with a deadly weapon, deliberately sought out Hager to take money from him. Hampton not only used the knife to threaten force, but also stabbed Hager in the hip, drawing blood and resulting in a wound requiring stiches. Hampton and his accomplice took Hager's bank cards in addition to his money. Thus, the nature of the crime supports a sentence above the advisory.

[15] As to Hampton's character, at the age of thirty-five, he already has ten prior felony convictions and twenty-two prior misdemeanor convictions. His criminal history includes convictions for burglary, theft, conversion, possession of methamphetamine, possession of a controlled substance, possession of paraphernalia, domestic battery, resisting law enforcement, and false informing. Appellant's App. Vol. 2 at 118-23. The current offense is similar in nature to his previous crimes but even more violent. At the time of sentencing, Hampton had pending drug charges in Allen County and an active failure-to-appear warrant out of a Cass County paternity case. Hampton contends that the trial court should have considered other more lenient sentencing options, but he has

been afforded such opportunities before, and they have clearly been ineffective in modifying his behavior. We conclude that Hampton has failed to carry his burden to show that his sentence is inappropriate based on the nature of the crime and his character. Accordingly, we affirm his sentence.

## Section 3 – Remand is necessary for the trial court to vacate the convictions on Counts II and III.

As a final matter, we sua sponte address what appears to be a double jeopardy violation. *See Whitham v. State*, 49 N.E.3d 162, 168 (Ind. Ct. App. 2015) (stating that double jeopardy violations implicate fundamental rights, and this Court may address such violations sua sponte), *trans. denied* (2016). Our review of the transcript suggests that the trial court sought to "merge" the three counts against Hampton based on double jeopardy grounds. Tr. Vol. 2 at 111. The abstract of judgment provides that the disposition for both Counts II and III is "Conviction Merged[.]" Appealed Order (Abstract of Judgment) at 1. The judgment of conviction states that the trial court found Hampton guilty of "Count I, Robbery, a Level 3 Felony; Count II, Battery, a Level 5 Felony; and Count III, Criminal Recklessness[,] a Level 6 Felony." Appealed Order (Judgment of Conviction) at 1. The judgment of conviction also shows that for purposes of sentencing, Counts II and III "merge" with Count I. *Id*.

We observe that "a double jeopardy violation occurs when judgments of conviction are entered and cannot be remedied by the practical effect of concurrent sentences or by merger after conviction has been entered." *Payton v. State*, 818 N.E.2d 493, 497 (Ind. Ct. App. 2004) (quotation marks omitted),

*trans. denied* (2005); *see also Bass v. State*, 75 N.E.3d 1100, 1103 (Ind. Ct. App. 2017) (concluding that merger of convictions was insufficient to remedy double jeopardy violation); *West v. State*, 22 N.E.3d 872, 875 (Ind. Ct. App. 2014) (same), *trans. denied* (2015); *Kovats v. State*, 982 N.E.2d 409, 414-15 (Ind. Ct. App. 2013) (same). Therefore, we remand this cause to the trial court with instructions to vacate the convictions on Counts II and III and enter judgment of conviction and sentence only upon Count I.

[18]  Affirmed and remanded.

May, J., and Pyle, J., concur.